Submitted June 6, reversed August 13, 2014

Vicki Lee MILEY,
*Petitioner-Respondent,*

*v.*

Kevin Lee MILEY,
*Respondent-Appellant.*

Marion County Circuit Court
13C11474; A154196

335 P3d 853

Ann Lechman-Su and Law Office of Ann Lechman-Su filed the brief for appellant.

Melanie Kebler and Oregon Crime Victims Law Center filed the brief for respondent.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Lagesen, Judge.

LAGESEN, J.

**LAGESEN, J.**

Respondent appeals from a judgment entering a permanent stalking protective order (SPO) against him. He contests the sufficiency of the evidence supporting the SPO.[1] Because this is not an "exceptional case" warranting *de novo* review, we review the trial court's factual findings for "any evidence" and its legal conclusions for errors of law. *Travis v. Strubel*, 238 Or App 254, 256, 242 P3d 690 (2010). Applying that standard of review, we conclude that the evidence is insufficient to support the entry of the SPO against respondent. Accordingly, we reverse.

To be entitled to the issuance of an SPO,[2] a petitioner must prove, among other things, that the respondent subjected the petitioner to repeated unwanted contacts[3] that

---

[1] Respondent also assigns error to (1) the trial court's consideration of documents that were not entered into the evidentiary record; and (2) the trial court's failure to analyze whether any expressive contacts satisfied the heightened standard established by *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999). With respect to the first point, our precedent dictates that we review the sufficiency of the evidence supporting the SPO on the evidentiary record created in the trial court, and do not consider documents or testimony not entered into evidence. *Falkenstein v. Falkenstein*, 236 Or App 445, 447, 450, 236 P3d 798 (2010); *Jones v. Lindsey*, 193 Or App 674, 677, 91 P3d 781 (2004). Here, although the transcript reflects that petitioner brought exhibits with her to the hearing, and that the trial court reviewed some of those exhibits, none of those documents were admitted into evidence. Accordingly, the evidentiary record for purposes of our review consists of the testimony presented at the hearing.

With respect to the second point, because we conclude that the evidence is insufficient to support the issuance of an SPO under the less-stringent standard applicable to SPOs predicated on nonexpressive contact, we need not address whether the trial court erred under *Rangel*. *See Osborne v. Fadden*, 225 Or App 431, 439, 201 P3d 278, *rev den*, 346 Or 213 (2009) (taking the same approach).

[2] The trial court entered the SPO under ORS 163.738. As we have recognized, the substantive standards for an SPO under ORS 163.738 are the same as for an SPO under ORS 30.866; the difference between the two types of SPOs is the manner in which the SPO proceeding is initiated. *Carter v. Bowman*, 249 Or App 590, 593-94, 277 P3d 634, *rev den*, 352 Or 377 (2012). Accordingly, we look to cases decided under both ORS 30.866 and ORS 163.738 in assessing whether the evidence is sufficient to establish the predicate facts for the issuance of an SPO.

[3] For purposes of the SPO statutes, "contact" includes, among other things, "[c]oming into the visual or physical presence of the other person;" "[f]ollowing the other person;" "[w]aiting outside the home, property, place of work or school of the other person or of a member of that person's family or household;" "[s]ending or making written or electronic communications in any form to the other person;" "[c]ommunicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person;" or "[d]elivering directly or through a third person any object to the home, property, place of work or school of the other person." ORS 163.730(3).

caused "the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household." ORS 163.738(2)(a)(B)(iii). Specifically, the petitioner must prove facts demonstrating that "the contacts, cumulatively, [gave] rise to subjective apprehension regarding the petitioner's personal safety or the personal safety of a member of the petitioner's immediate family or household, and that apprehension must be objectively reasonable." *Blastic v. Holm,* 248 Or App 414, 418, 273 P3d 304 (2012).

Viewing the evidence, and all reasonable inferences therefrom, in the light most favorable to petitioner, *Delgado v. Souders,* 334 Or 122, 134, 46 P3d 729 (2002), we conclude that petitioner failed to prove such facts here, and the trial court erred by concluding otherwise. Certainly, the evidence supports the trial court's finding that respondent subjected petitioner to repeated unwanted contacts within the meaning of the SPO statutes. The evidence also would support a finding that those repeated unwanted contacts upset, angered, and embarrassed petitioner. However, there is simply no evidence in the record to support a finding that the contacts caused petitioner subjectively to fear for her personal safety, or to permit the conclusion that, under the particular circumstances, any such fear was objectively reasonable.

Specifically, the evidence presented below demonstrates the following facts, when that evidence is viewed in the light most favorable to petitioner. Respondent is petitioner's ex-husband; their divorce was finalized in January 2013. After the parties separated, petitioner moved to Mt. Angel, but did not tell respondent where she was living. Notwithstanding the parties' separation, respondent continued to contact petitioner by phone, mail, and e-mail between the date petitioner moved to Mt. Angel and April 3, 2013, the date of the SPO hearing. The record is silent with respect to the content of respondent's communications to petitioner, with the exception of two. On March 29, 2013, respondent sent a letter to petitioner stating, "Hello, [petitioner]. Here's a little something for you, since you are a slutty whore now. How many guys have you slept with since you left your husband? I know of four." A box of condoms

accompanied that letter. Shortly thereafter, respondent sent an e-mail to petitioner. The e-mail read, "I sent you a birthday card with a picture in it and a letter. Kevin." Apart from encountering petitioner on one occasion at the barn where petitioner boarded her horse, respondent did not have any direct, in-person contact with petitioner.

During the same time period, respondent also began appearing in Mt. Angel "a lot," including showing up at the barn and driving by the street where petitioner lives. In addition, respondent sent anonymous letters to 27 or so of petitioner's friends and acquaintances, including petitioner's boss, the "guy that works on [petitioner's] car," and petitioner's fellow members of a car club. The record does not disclose the content of the letters, apart from the fact that they said "horrible things" about petitioner.

As noted, those facts—which are supported by the evidence in the record—show that respondent subjected petitioner to repeated unwanted contacts that were upsetting and inappropriate. But nothing in the record permits the finding or inference that those repeated contacts caused petitioner to fear for the personal safety of herself or a family member, or that any such fear would be reasonable. Petitioner did not testify that she felt threatened by respondent. There is no evidence that respondent and petitioner's marriage had been violent, or that respondent had any other history of violence. There is no evidence that the content of the communications were threats of any sort. To the extent that the record contains evidence of the content of respondent's communications, that evidence reflects that the communications involved vindictive name-calling, rather than threats. *See Osborne v. Fadden*, 225 Or App 431, 439, 201 P3d 278, *rev den*, 346 Or 213 (2009) (reversing SPO where contents of some contacts contained "sexual solicitations," but no threat of harm, and, thus, were not sufficient to cause petitioners reasonable apprehension regarding their personal safety); *Sparks v. Deveny*, 221 Or App 283, 291-93, 189 P3d 1268 (2008) (concluding record lacked evidence that unwanted contacts caused the petitioner reasonable apprehension regarding physical safety where there was no evidence that the respondent had a history of violence, where the respondent had not made express threats, and where the

petitioner did not testify that she was apprehensive regarding her own or anyone else's personal safety). And there is no other evidence about respondent, petitioner, or the circumstances of their particular relationship that would support a finding that petitioner in fact feared for her personal safety as a result of petitioner's contacts, or permit the conclusion that any such fear, in context, was objectively reasonable.[4]

Reversed.

---

[4] Petitioner requests that, in the event we reverse, we remand for her to further develop the record in support of the SPO. We decline that request. At the hearing, petitioner confirmed on the record that she had "read what you need to show the Court to get a stalking order," and was given wide latitude by the trial court to testify to the facts justifying the entry of an SPO.