810 May 30, 2024 No. 365

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

A. S.,
*Petitioner-Respondent,*

*v.*

ANTHONY RICH,
*Respondent-Appellant.*

Coos County Circuit Court
23SK00663; A181120

Kirsten E. Thompson, Judge.

Submitted April 15, 2024.

Rankin Johnson and Rankin Johnson Law, LLC filed the brief for appellant.

No appearance for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and DeVore, Senior Judge.

HELLMAN, J.

Reversed.

**HELLMAN, J.**

Respondent appeals a judgment entering a permanent stalking protective order (SPO) against him. In a single assignment of error, he challenges the sufficiency of the evidence to support the SPO. For the following reasons, we reverse.

Respondent has not requested *de novo* review and we decline to exercise that discretion because this case is not "exceptional." ORAP 5.40(8)(c) (providing that the court will exercise its discretion to review *de novo* "only in exceptional cases"). "Given respondent's challenge to the sufficiency of the evidence, we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome." *H. L. P. v. Jones*, 309 Or App 108, 109, 481 P3d 415 (2021) (internal quotation marks omitted).

A detailed recitation of the facts in this case would not benefit the bench, the bar, or the public. Here, petitioner filed a petition for an SPO and alleged that respondent had threatened to kill him. At the contested hearing, the trial court entered the permanent SPO, relying on petitioner's testimony that respondent had vandalized petitioner's car and on Facebook messages that respondent had sent to petitioner. On appeal, respondent argues that the evidence did not support the entry of the permanent SPO.

To obtain an SPO under ORS 30.866(1), petitioner was required to establish by a preponderance of the evidence that,

"(a)   The respondent intentionally, knowingly or recklessly engages in repeated and unwanted contact with the petitioner or a member of the petitioner's immediate family or household thereby alarming or coercing the petitioner;

"(b)   It is objectively reasonable for a person in the petitioner's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the petitioner reasonable apprehension regarding the personal

safety of the petitioner or a member of the petitioner's immediate family or household."[1]

"Alarm" means "to cause apprehension or fear resulting from the perception of danger." ORS 163.730(1). Danger "refer[s] to a threat of physical injury, not merely a threat of annoyance or harassment." *See S. A. B. v. Roach*, 249 Or App 579, 586, 277 P3d 268 (2012). "Contact" includes damaging the petitioner's property and "repeated" means "two or more times." ORS 163.730(3)(j), (7).

Viewing the record in the light most favorable to the trial court's disposition, we conclude that the record is legally insufficient to establish repeated unwanted contacts under ORS 30.866(1).

First, we conclude that petitioner's testimony was legally insufficient to prove that a person in his situation would have felt objectively reasonable fear of physical injury when his car was vandalized. *See S. A. B.*, 249 Or App at 587 (explaining that the "[t]he victim's situation includes all of the circumstances of the parties' relationship" and that the respondent's conduct "did not give rise to an objectively reasonable apprehension or fear of physical injury" either at the time or in the future). Therefore, that evidence was insufficient to establish a qualifying contact under ORS 30.866(1).

Second, we conclude that the Facebook messages in the record fail to establish qualifying contacts.[2] Because petitioner alleged that respondent contacted him via Facebook message, "those communications must rise to the level of a threat to be considered *** qualifying unwanted contact[s]" under ORS 30.866. *J. S. v. Hudgins*, 329 Or App 176, 179, 540 P3d 599 (2023) (internal quotation marks omitted). "Qualifying threats are communications that 'instill[] in the addressee a fear of imminent and serious personal violence from the speaker, [are] unequivocal, and

_____

[1] "The main difference between ORS 163.738(2) and ORS 30.866 is that an SPO proceeding under ORS 163.738(2) begins with a complaint by the victim and a citation issued by a law enforcement officer, but a proceeding under ORS 30.866 begins with the victim's petition directly to the court ***." *C. L. C. v. Bowman*, 249 Or App 590, 593-94, 277 P3d 634, *rev den*, 352 Or 377 (2012).

[2] At the contested hearing, petitioner introduced into evidence Facebook messages from respondent. Those exhibits were not included in the record on appeal.

[are] objectively likely to be followed by unlawful acts.'" *Id.* (quoting *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999)). We have reviewed the record and conclude that neither the messages in the record nor petitioner's testimony establishes qualifying threats under *Rangel*. *See S. A. B.*, 249 Or App at 585 ("[A]s we have repeatedly held, offensive, hostile, and aggressive statements are not enough to satisfy the standard, nor are equivocal threats or threats that are not objectively likely to be acted upon."); *State v. Hejazi*, 323 Or App 752, 762, 524 P3d 534 (2023) ("Hyperbole, rhetorical excesses, and impotent expressions of anger or frustration— even if they are alarming—are insufficient under *Rangel*."). Because the evidence is legally insufficient to support the trial court's conclusion that two qualifying contacts occurred, the trial court erred when it entered the SPO.

Reversed.